IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| CLAUDE MCQUEEN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CASE NO. 2:17-cv-215-TFM |
| | ) | [wo] |
| STATE OF ALABAMA DEPARTMENT OF TRANSPORTATION, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This action is assigned to the undersigned magistrate judge to conduct all proceedings and order entry of judgment by consent of all the parties pursuant to 28 U.S.C. § 636(c). *See* Docs. 18-19. Now pending before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 25, filed December 18, 2017). The motion is fully submitted and ripe for review. After a careful review of all the written pleadings, motions, responses, and replies, the Court GRANTS Defendant's motion to dismiss for the reasons articulated below.

I. PARTIES AND JURISDICTION

Plaintiff Claude McQueen ("Plaintiff" or "McQueen") asserts claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as he brings claims under 42 U.S.C. §§2000e *et seq* (Title VII of the Civil Rights Act of 1964). Defendant is the State of Alabama Department of Transportation. Though the Defendant styles its motion as one under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), that assertion is on the basis of *res judicata* and not a general statement that the Court lacks subject matter jurisdiction to address Title VII violations. Therefore, the Court determines that no party contests general subject matter and adequate support exists for its determination.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This Title VII action has its genesis in a prior Title VII/§ 1983 action filed by McQueen and adjudicated in this court. Defendants argue that *res judicata* forecloses McQueen from reigniting the dispute surrounding his race discrimination and retaliation claims. McQueen disputes the application of *res judicata* and argues that this racial discrimination and retaliation claim could not have been brought in the prior lawsuit. To understand the cases, it is helpful to outline the salient facts of both lawsuits.

**A.  The prior lawsuit (McQueen I)**

It is undisputed that Plaintiff previously filed a lawsuit on October 1, 2014 in the Middle District of Alabama related to claims of racial discrimination and retaliation against his employer ALDOT and three supervisors. *See* Civ. Act. No. 2:14-cv-1016-DAB, Doc. 1. McQueen was originally *pro se* in that particular lawsuit. After a motion to dismiss was filed, Plaintiff obtained counsel who appeared on his behalf and amended the complaint. *See* Docs. 26, 30, 33. Subsequently, the claims brought pursuant to 42 U.S.C. § 1983 were dismissed and the case proceeded with discovery. *See* Docs. 43-44, 50-51. ALDOT eventually filed a motion for summary judgment with brief in support and evidentiary attachments. *See* Docs. 56-63. After the parties had the opportunity to fully brief the issues, the Court granted the motion for summary judgment on June 30, 2017. *See* Doc. 82.

McQueen asserted claims for unequal pay, hostile work environment, and retaliation pursuant to Title VII and 42 U.S.C. § 1983. *See* Doc. 33; Doc. 82 at p. 9-16.[1] As part of the Court's opinion for the retaliation claim it stated as follows:

> Although not raised in his Second Amended Complaint, McQueen additionally testified that Boothe threatened to reprimand him which he believes

---
[1]  The claims and factual specifics addressed in the Court's memorandum opinion and order are incorporated by reference in this opinion. *See* Doc. 82 generally.

was in retaliation of his protected activity. (Doc. 77 at 12). As a preliminary matter, this exchange could not have served as the basis for McQueen's complaint for retaliation because the reprimand occurred after McQueen had filed the lawsuit. (Doc. 58-4 at 153:23–154:2). Additionally, there is no indication Boothe was aware of the EEOC charge at the time of the filing of the lawsuit. (Doc. 59-2, ¶ 23). Moreover, a "threatened reprimand" is not an ultimate employment decision such as "termination, failure to hire, or demotion," *see Crawford*, 529 F.3d at 970, nor is there any evidence that the "threatened reprimand" altered the terms and conditions of his employment.

McQueen offers the Declaration of Barron who states Boothe questioned Barron about McQueen's job performance after McQueen filed his EEOC charge and this lawsuit. (Doc. 77 at 12) (referring to Doc. 78-2 at 2–5). Thereafter, McQueen claims that Boothe gave him a low job rating. The Eleventh Circuit has recognized that "a poor performance evaluation that directly results in the denial of a pay raise of any significance clearly affects an employee's compensation and thus constitutes an adverse employment action under Title VII." *Crawford*, 529 F.3d at 971 (citing *Gillis v. Ga. Dep't of Corr.*, 400 F.3d 883, 888 (11th Cir. 2005)). However, again, this was not raised in his pleadings or his deposition as a basis for his retaliation claim, but even assuming McQueen could establish that the low job rating was an adverse employment action, that Boothe was aware of McQueen's statutorily protected activity at the time the low rating was given, and that there was a causal connection between the two such that McQueen can establish a *prima facie* case of retaliation, his claim nevertheless fails.

In this circuit, courts apply the *McDonnell Douglas* burden-shifting framework to analyze retaliation claims. *Gerard v. Bd. of Regents of State of Ga.*, 324 F. App'x 818, 825 (11th Cir. 2009) (citing *Holifield v. Reno*, 115 F.3d 1555, 1564–66 (11th Cir. 1997) (per curiam)). Under *McDonnell Douglas*, a plaintiff bears the initial burden of presenting sufficient evidence to allow a reasonably jury to determine that he has satisfied the elements of his *prima facie* case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If plaintiff is able to establish a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. *Id.* If defendant provides such reason, the burden shifts back to the plaintiff to show that the defendant's stated reason was pretextual. *Id.* at 804.

Defendants have filed the affidavit of Jason Boothe who has been McQueen's supervisor since 2009. (Doc. 59-2, ¶ 19). He has disciplined McQueen on four separate occasions for violation of ALDOT's policies and procedures. *Id.* Three of the four disciplinary incidents occurred prior to the incident in the truck with Grissett. The one reprimand that occurred after McQueen filed his May 2014 EEOC charge of discrimination occurred nearly two years later in April 2016. *Id.* Boothe states that none of his discipline of McQueen was in retaliation for McQueen filing the EEOC charge or this lawsuit. *Id.*, ¶ 20. Rather, any disciplinary action taken was due to McQueen's violation

of ALDOT's policies and procedures. *Id.* Thus, Defendants have articulated a legitimate, non-discriminatory reason for the action.

To show that Defendants' stated reason is a pretext, McQueen must present sufficient evidence "to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citation omitted). McQueen has failed to come forward with any evidence that the reason given is a pretext, and therefore, his retaliation claim fails.

*See* Civ. Act. No. 2:14-cv-1016, Doc. 82 at p. 14-15.

**B.     The Present Lawsuit (McQueen II)**

The instant lawsuit (hereinafter "McQueen II") was filed on April 17, 2017. *See* Doc. 1. It asserts claims against ALDOT pursuant to Title VII for race discrimination and retaliation as they relate to a March 2016 poor evaluation from Jason Boothe (supervisory defendant from McQueen I). *Id.* After ALDOT filed a motion to dismiss, Plaintiff filed two motions to amend his complaint. *See* Docs. 15, 17. Over the Defendant's objection, the Court permitted Plaintiff to file an amended complaint which is the current complaint for the Court to evaluate. *See* Docs. 22, 23. The complaint alleges that since 2009, McQueen has filed three EEOC charges against the defendant for various incidents of race discrimination in the denial of promotions and other terms and conditions of employment. *See* Doc. 23 at ¶ 7. The relevant facts and claims stated in McQueen II are as follows:

III.  FACTS

5.      McQueen has been employed by the State of Alabama for approximately 24 years. He works in the Alabama Department of Transportation.

6.      McQueen currently works on a five-man crew where he is the only African-American crew member. Since becoming a member of this five-man crew, McQueen has been subjected to race discrimination and retaliation.

7.      Since 2009, McQueen has filed approximately three EEOC charges against the Defendant for various incidents of race discrimination in the denial of promotions and other terms and conditions of employment.

8.      Specifically, in 2010, McQueen received a job evaluation score of 26.70 and a raise. In 2011, McQueen received a job evaluation score of 13.33 and

no raise for which he filed a charge of discrimination. After 2011, McQueen received no job evaluations.

        9. In 2014, McQueen filed a charge of discrimination on the basis of race, sex, and age. He also alleged that he had been retaliated against and denied equal pay for his prior protected activity. Upon receiving a Notice of Right to Sue for the 2014 charge, McQueen sued the Defendant, Jason Boothe [white male], Sharon Ellis [white female], and Mike Griffin [white male] for discrimination. This case is currently still in litigation and is styled *Claude McQueen v. Alabama Department of Transportation*, et al., Case No. 2:14-cv-1016-WKW.

        10. In March 2016, McQueen received yet another poor evaluation from Jason Boothe, that had no basis in fact. When McQueen questioned the basis of Boothe's evaluation of him, he was mocked. Boothe expressed to McQueen that if he had an issue with the evaluation he could go to human resources and that he [Boothe] did not care about McQueen's civil rights. White employees are not treated in this manner in that they receive evaluations based on their job performance and not their race or for engaging in protected activity.

        11. McQueen has been subjected to a continuous policy of discrimination for at least five years.

…

        13. Specifically, the Defendant discrimination against McQueen in the terms and conditions of employment by subjecting him to discriminatory evaluations that affect his ability to get promoted and earn merit raises that are received by similarly situated white employees who are not treated in this manner.

…

        20. Plaintiff restates and incorporates by reference Paragraphs 1-19 above as part of this Count of the Complaint.

        21. The Defendant retaliated against McQueen because of his opposition to and reporting of discrimination by giving him negative performance evaluations in violation of Title VII…

*See* Doc. 23.

**C.**     <u>**General Timeline – Summary**</u>

- October 1, 2014 – McQueen I case filed in the Middle District of Alabama.

- March 2016 – McQueen given a poor evaluation which he then almost immediately files an EEOC charge of race discrimination and retaliation for his prior protected activity.

- January 9, 2017 – EEOC issued a Notice of Right to Sue letter regarding the allegations of race discrimination and retaliation for the March 2016 poor evaluation.

- March 20, 2017 – Defendant's Motion for Summary Judgment filed in McQueen I.

- April 12, 2017 – McQueen II case filed in the Middle District of Alabama.

- April 20, 2017 – Plaintiff filed response to summary judgment motion in McQueen I. Discussing same issues of retaliation filed in McQueen II.

- June 30, 2017 – Court grants summary judgment in McQueen I and dismisses case.

- July 28, 2017 – Notice of Appeal to Eleventh Circuit filed in McQueen I.

- July 31, 2017 – Defendant files first motion to dismiss in McQueen II.

- November 28, 2018 – Court granted Plaintiff's motion to amend in McQueen II and denying first motion to dismiss as moot.

- December 4, 2017 – Plaintiff files amended complaint in McQueen II.

- December 18, 2017 – Defendant files motion to dismiss amended complaint in McQueen II.

- January 14, 2018 – Plaintiff files response to motion to dismiss in McQueen II.

- January 23, 2018 – Defendant files reply for motion to dismiss amended complaint in McQueen II.

- April 13, 2018 – Appeal in McQueen I dismissed for want of prosecution.

### III. STANDARD OF REVIEW

All litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure. Generally, complaints by *pro se* plaintiffs are read more liberally than those drafted by attorneys. *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008). Although the court is required to liberally construe a *pro se* litigant's pleadings, the court does not have "license to serve as *de facto* counsel for a party. . .or to rewrite an otherwise deficient pleading in order to

sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted) (overruled on other grounds by *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010)); *see also Giles v. Wal-Mart Distrib. Ctr.*, 359 F. App'x 91, 93 (11th Cir. 2009) (internal citations and quotation omitted) ("Although *pro se* pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally, this liberal construction does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action."). However, while the record now reflects that Plaintiff is *pro se*, it is important to note that at the pleading stage and in response to the motion to dismiss, McQueen was represented by counsel.[2] As such, the Court is not required to currently apply any *pro se* liberal interpretation to the Amended Complaint or response to the motion to dismiss.

Next, there are three potential standards of review raised by Defendant ALDOT in its motion to dismiss: Rule 12(b)(1) facial attack, Rule 12(b)(1) factual attack, and Rule12(b)(6). While Defendant ALDOT styles its motion to dismiss as one brought under Rule 12(b)(1) and Rule 12(b)(6), the Court finds it most appropriately brought pursuant to Rule 12(b)(6) failure to state a claim for which relief can be granted. *See Marsh v. Butler Cty.*, 268 F.3d 1014, 1022 (11th Cir. 2001) (quoting *Larter & Sons, Inc. v. Dinkler Hotels Co.*, 199 F.2d 854, 855 (5th Cir. 1952) (holding that affirmative defense of res judicata can be raised properly and decided in 12(b)(6) motion); *see also Blevins v. City of Tuskegee*, Civ. Act. No, 3:10-cv-619-WKW, 2011 U.S. Dist. LEXIS 25968, *2, 2011 WL 855334, *1 (M.D. Ala. Mar. 11, 2011) (quoting *Marsh*).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Gilmore*, 125 F. Supp.2d at 471. To survive a motion to dismiss for failure to state a claim, the plaintiff

---

[2] On January 24, 2018, Plaintiff's counsel filed a motion to withdraw which was granted after a hearing. *See* Docs. 30, 31, 32. Plaintiff requested that the Court appoint him new counsel which was ultimately denied. *See* Docs. 33, 35.

must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In considering a defendant's motion to dismiss, the "court must view the complaint in the light most favorable to the plaintiff and accept all the plaintiff's well-pleaded facts as true." *Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) (*citing St. Joseph's Hosp. Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986)). In other words, in deciding a 12(b)(6) motion to dismiss, the court will accept the petitioner's allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed.2d 59 (1984); *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998); *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998) (citing *Lopez v. First Union National Bank of Florida*, 129 F.3d 1186, 1189 (11th Cir. 1997)). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)); *see also Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (conclusory allegations and unwarranted deductions of fact are not admitted as true).

Thus, a complaint should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558, 127 S. Ct. at 1966. Further, "this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Id*. at 555, 127 S. Ct. at 1964-65 (citations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. *Id*. Thus, it does not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Id*. at 570, 127 S. Ct. at 1974. It is not enough that the pleadings merely "le[ave] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 561, 127 S. Ct. at 1968 (internal quotation and alteration omitted). Consequently, the threshold for a complaint to survive a motion to dismiss is "exceedingly low." *Ancata v. Prison Health Services, Inc*., 769 F.2d 700, 703 (11th Cir. 1985).

### IV. DISCUSSION AND ANALYSIS

First, while generally a Court may not consider matters outside the pleadings without converting a motion to dismiss to a motion for summary judgment. However, the prior lawsuit filed by McQueen is public record. The Eleventh Circuit has held "a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion." *Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (citation omitted) (stating court properly may take judicial notice of the pleadings and orders in another case, without "converting [the] motion to dismiss into a motion for summary judgment.").

"The preclusive effect of a federal-court judgment is determined by federal common

law." *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161, 2171, 171 L. Ed. 2d 155 (2008) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-508, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001)). Additionally, it is defined by claim preclusion and issue preclusion which are collectively called "res judicata." *Id.* at 892, 128 S. Ct. at 2171. "The general principle of res judicata prevents the relitigation of issues and claims already decided by a competent court." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011). "Res judicata comes in two forms: claim preclusion (traditional "res judicata") and issue preclusion (also known as "collateral estoppel"). *Id.* (citing *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 598, 68 S. Ct. 715, 92 L. Ed. 898 (1948)). Parties often use the term *res judicata* interchangeably and collectively whether referencing claim and issue preclusion, so the Court will address both.

The doctrine of what is commonly referred to as *res judicata* "bars the filing of *claims* which were raised or could have been raised in an earlier proceeding." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999) (emphasis added). For *res judicata* to apply, four elements must be met: (1) a final judgment on the merits, (2) the decision was rendered by a court of competent jurisdiction, (3) the parties (or those in privity with them) are identical in both suits, and (4) the cases involve the same cause of action. *Id.*; *see also McNear v. Wells Fargo Bank, N.A.*, 651 F. App'x 928 (11th Cir. 2016) (reciting elements and citing *Ragsdale*). It also may be raised sua sponte when "both actions were brought before the same court." *Shurick v. Boeing Co.*, 623 F.3d 1114, 1116 n.2 (11th Cir. 2010) (citation and internal quotation marks omitted); *see also Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980) (the court can dismiss on res judicata grounds at the pleadings stage "in the interest of judicial economy where both actions were brought before the same court.").

"Collateral estoppel, or issue preclusion, bars the relitigation of an issue that was litigated

and resolved in a prior proceeding." *Wachovia Bank N.A. v. Tien*, 658 F. App'x 471, 473-74 (11th Cir. Jul. 27, 2016) (citing *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998)). "In order to rely on collateral estoppel, the party raising the doctrine must show that: (1) the present issue is identical to an issue in a previous proceeding; (2) the issue was actually litigated in the previous proceeding; (3) resolution of the issue must have been an essential part of the judgment in the previous proceeding; and (4) the party against whom the doctrine is being raised must have had a full and fair opportunity to litigate the issue in the first proceeding." *Id*. at 474.

Finally, similar to *res judicata* is the issue of improper claim splitting which is generally analyzed as an aspect of *res judicata* or claim preclusion. *See Vanover v. NCO Fin. Servs.*, 857 F.3d 833, 841 (11th Cir. 2017). "The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'" *Id*. at 841 (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)). "The claim-splitting doctrine thereby ensures that a plaintiff may not split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails." *Id*. (citations and internal quotations omitted). Ultimately, the Eleventh Circuit agreed with the Tenth Circuit and stated "makes sense, given that the claim-splitting rule exists to allow district courts to manage their docket and dispense with duplicative litigation." *Id*. As such, the court applies "a two-factor test whereby the court analyzes (1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Id*. at 841-42 (citation

omitted).

Ultimately, "[w]hile claim-splitting and res judicata both promote judicial economy and shield parties from vexatious and duplicative litigation, 'claim splitting is more concerned with the district court's comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments.'" *Id*. at 841 (quoting *Katz*, 655 F.3d at 1218).

At the outset, when McQueen II was originally filed on April 12, 2017, *res judicata* would not have applied as McQueen I was still pending. So without a final judgment, *res judicata* could not have applied at that time and claim-splitting would have been the more appropriate analysis. However, shortly thereafter on June 30, 2017, Judge Baker entered a final judgment on the merits of McQueen's claims in the first case ruling in favor of the Defendants (to include ALDOT). As such, while the Court could have analyzed it in the context of claim-splitting under *Vanover*, the Court will now view McQueen II through the lens of *res judicata*.

As discussed above, for *res judicata* to apply four elements must be satisfied: (1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved both cases. The first three elements are unquestionably met. McQueen I resulted in a final judgment on the merits rendered by a court of competent jurisdiction, and ALDOT was a defendant in both suits. The only element remaining is whether McQueen I and McQueen II involve the same cause of action.

Claims are part of the same cause of action when they arise out of the same nucleus of operative fact, or are based on the same factual predicate. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296-97 (11th Cir. 2001). "In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form." *Id*. (quoting *Ragsdale*, 193

F.3d at 1239). Finally, res judicata bars all legal theories and claims arising out of the same nucleus of facts as a prior action, as the analysis centers on whether the primary right and duty are the same between the two causes of action. *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1289 (11th Cir. 2007) (*quoting Manning v. City of Auburn*, 953 F.2d 1355, 1358 (11th Cir. 1992)) (internal quotations omitted).

Defendant avers McQueen II stems from the same operative facts as McQueen I. Plaintiff argues to the contrary and states that the claims were not raised in his prior pleadings or deposition. In support of his argument, Plaintiff relies upon *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354.

In *Pleming*, the plaintiff filed an employment discrimination lawsuit in 1994 asserting claims relying upon Title VII and § 1981 for failure to hire in a 1993 clerical position. The 1994 lawsuit is referred to as Pleming I. Later in 1994, during the course of the litigation, two additional positions opened up, though the plaintiff did not learn about those positions until May 1995. The plaintiff did not amend her complaint to include the discrimination allegations arising out of the additional positions; however, she did seek to use those incidents to establish pretext when arguing against summary judgment in the 1994 lawsuit. Ultimately, the district court granted summary judgment for the defendant on the first lawsuit. In 1996, the plaintiff filed a new lawsuit (Pleming II) against the same defendant – this time alleging discrimination and retaliation for the two 1994 positions. The defendant moved for dismissal based upon *res judicata* or collateral estoppel. The district court granted the motion. *Pleming*, 142 F.3d at 1355-56. However, the Eleventh Circuit on appeal reversed the decision which is the basis of the *Pleming* appellate case relied upon by McQueen. Ultimately, the Eleventh Circuit held that the mere references to the 1994 discrimination/retaliation in briefs did not actually raise the issues in

Pleming I as they were not pled and the "isolated reference in the magistrate judge's report does not support the defendant's contention that the magistrate judge and district court actually adjudicated an unpled and unasserted claim." *Id*. at 1359. Moreover, the Eleventh Circuit stated that "[a]t best, the report's reference to the post-1993 openings indicates that the magistrate judge may have considered the events as evidence of pretext but does nothing to suggest that the magistrate judge actually rendered a decision about whether those events constituted independent or even continuing acts of employment discrimination." *Id*.

While upon initial glance there are substantial similarities between the Pleming case and McQueen's cases, there is also two glaring distinctions – which makes all the difference. First, in *Pleming*, the Eleventh Circuit said that the court had not ruled substantively on the issues presented in Pleming II. However, in McQueen I, the court DID rule on the claims presented in McQueen II. *See* McQueen I, Civ. Act. No. 2:14-cv-1016, Doc. 82 at p. 14-15. The Court stated "even assuming McQueen could establish that the low job rating was an adverse employment action, that Boothe was aware of McQueen's statutorily protected activity at the time the low rating was given, and that there was a causal connection between the two such that McQueen can establish a *prima facie* case of retaliation, his claim nevertheless fails." *Id*. Whether or not the previous court should have addressed the claims is not for this Court to decide. Rather, the lens through which this Court must view the question is whether the causes of action are based on the same factual predicate or arise out of the same nucleus of operative fact. In this case, they clearly were. Further, the appeal on the action was dismissed on April 13, 2018 which renders the judgment final. *See* Civ. Act. No. 2:14-cv1016, Doc. 93.

Plaintiff argues in his response to the motion to dismiss in McQueen that he could not have brought these claims in McQueen I because he received his right to sue letter approximately

6-months after the deadline to amend pleadings in McQueen I and thus he was barred from amending the complaint in McQueen I. However, the record also shows that he never asked the Court whether he could amend. Nor does it appear he notified the judge of the first court of his intent to file a second lawsuit.[3] This is the basis for the Court also raising claim-splitting in its earlier discussion on the law and also brings the Court to the second distinction between this case and *Pleming*.

In *Pleming*, the plaintiff brought suit after the Pleming I concluded. 142 F.3d at 1356. However, McQueen II was filed while McQueen I remained pending. Therefore, while *res judicata* is one lens through which the Court may view this case, analysis under claim-splitting using *Vanover*'s is not excluded. Applying *Vanover's* two-factor test also results in dismissal of this action (McQueen II). Specifically, the case involves the same parties (McQueen and ALDOT) and the cases arise from the same series of transactions (discrimination and retaliation up through mid-2016). Moreover, claim splitting focuses on the district court's comprehensive management of its docket and ensures parties do not waste "scarce judicial resources" and undermine "the efficient and comprehensive disposition of cases." *Vanover*, 857 F.3d at 841 (citations omitted). "The addition of separate causes of action does not prevent the application of the claim-splitting doctrine." *Id*. at 843. Ultimately, the plaintiff should have requested to amend McQueen I and add the 2016 claims to the already pending litigation in McQueen I. If

---

[3] The Court notes that this reason is why collateral estopped would not apply to this case. As previously discussed, in order to rely on collateral estoppel, Defendant must show that: (1) the present issue is identical to an issue in a previous proceeding; (2) the issue was actually litigated in the previous proceeding; (3) resolution of the issue must have been an essential part of the judgment in the previous proceeding; and (4) the party against whom the doctrine is being raised must have had a full and fair opportunity to litigate the issue in the first proceeding. *Wachovia Bank*, 658 F. App'x at 474 (citing *Pleming*, 142 F.3d at 1359). While the first three elements are easily satisfied, the fourth element is questionable given that the March 2016 claim was never formally asserted in a pleading (only addressed in a response brief on summary judgment) and not subject to discovery even though ultimately the Court ruled on the claim in its memorandum opinion. However, despite this finding, it still serves as the basis for the undersigned moving to the issue of claim-splitting.

that motion had been denied then the Court may have viewed the situation with a different perspective. However, that is not the case at hand.

## V. CONCLUSION

Ultimately, when viewing McQueen II through the lens of *res judicata* and improper claim-splitting, the Court determines this case merits dismissal. Based on the analysis contained in this Memorandum Opinion, the Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 25) is GRANTED. An appropriate judgment will be entered.

DONE this 5th day of June, 2018.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE